UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Alexandra Vera</u>

      v.                                        Civil No. 23-cv-0198-SE
                                                  Opinion No. 2025 DNH 025
<u>F.W. Webb Company</u>

<u>ORDER</u>

F.W. Webb Company ("Webb"), a distributer of plumbing, heating, pipe, HVAC, and refrigeration fixtures and systems, terminated Alexandra Vera after she took two air conditioning units home without paying for them. She admits that she took the units home before she paid but alleges that they were not the true impetus for her termination. Instead, she alleges that her supervisor, Michael Wagner, subjected her to a hostile work environment, retaliated against her for reporting his misconduct, and wrongfully terminated her. Webb, relying largely on the undisputed facts surrounding the air conditioners, moves for summary judgment. In their briefing, the parties provide conflicting evidence with respect to nearly every other material fact. As a result, summary judgment is inappropriate except as to one of Vera's two alternate retaliation claims, her conclusory allegation that Wagner "shunned" her in retaliation for her complaint about his behavior.

<u>Standard of Review</u>

Granting summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit." French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quotation omitted). A material fact is

in genuine dispute if "a reasonable jury could resolve the point in the favor of the non-moving party." Id. In considering the evidence, the court must draw all reasonable inferences in the nonmoving party's favor. Theriault v. Genesis HealthCare LLC, 890 F.3d 342, 348 (1st Cir. 2018).

Background

I.    Wagner's General Treatment of Vera

On October 23, 2019, Wagner, Webb's general manager of its Nashua and Manchester, New Hampshire locations, and Bob Gordineer, Webb's director of showrooms, interviewed Vera for a position as a showroom manager at its Nashua location. Vera claims that throughout this interview, Wagner stared at her breasts. Webb hired Vera as a showroom manager, and she began shortly thereafter. She managed a team of four people—three women and one man.

Vera claims that throughout much of her time at Webb, Wagner subjected her to inappropriate touching, leering, and generally sexist comments. According to Vera, Wagner touched her lower back between 30 to 40 times and stared at her breasts whenever they had one-on-one meetings, which initially occurred two to three times per week. Wagner's ogling made Vera feel "uncomfortable," and she tried to make her meetings with him as brief as possible. Doc. no. 43-2, ⁋ 10. During these meetings, Vera "fidget[ed] with her sweater," and "fold[ed] [her] arms across [her] breasts" to try to get Wagner to stop staring at them. Id. In addition to his physical conduct, Wagner also made a variety of objectionable comments to Vera:

- Wagner speculated that Vera would have a difficult time managing a team of three women. Then, noting that the male supervisee was gay, said that Vera would effectively be supervising four women.

- Wagner referred to a female Webb employee as "the troll." Id., ¶ 13d.

- Wagner told Vera that one of her direct reports was a "weak woman" and that the employee was not "fit to wear heels." Id., ¶ 13e.

- When Vera complained to Wagner about a female colleague who was distracting her, Wagner wondered aloud, "Why can't women just get along?" Id., ¶ 13f.

- Wagner referred to women as "bitches" "on at least 12 occasions." Id., ¶ 13h.

- Wagner made homophobic remarks about Vera's gay male supervisee approximately 14 times.

II.    Vera's Complaint to Human Resources

On March 16, 2020, Webb hosted a conference call with all of its managers to discuss new polices related to recently implemented COVID-19 restrictions. Wagner understood the policies to mean that Vera's team could not have their regularly scheduled days off and told them so. In response, Vera called Wagner and told him that she had a different understanding of the policy. According to Vera, Wagner replied by yelling at Vera and attacking her supervisees and her showroom in general, saying something to the effect of: "F--k Luter, f--k all your people Alex. I am so sick of them. You do whatever the f--k you want to, I'm done." Doc. no. 43-2, ¶ 31.[1]

After her call with Wagner ended, Vera called Ruth Martin, Webb's Senior Vice President for Human Resources, to file a complaint. Though it is undisputed that Vera told Martin what Wagner had said on their call, the parties disagree about the remaining contents of Vera's

---

[1] Elsewhere, Vera recalls the quote as "Fuck Luter, fuck all the showroom people, I am so sick of your fucking people…" Doc. no. 41-3 at 51. "Luter" refers to one of Vera's direct reports.

conversation with Martin. In her deposition, Martin denied that Vera ever mentioned Wagner's mistreatment of women. Martin also claimed that no one had ever complained to her about Wagner's sexism. Vera concedes that she did not tell Martin about Wagner's ogling or his derogatory language on other occasions. However, in her affidavit, Vera asserts that she "reported Mr. Wagner's inappropriate behavior towards women," and told Martin that "Wagner does not ever treat men the same way" that he treats women. Doc. no. 43-2, ¶ 31. Vera states that Martin confirmed that Vera was not the first person to mention Wagner's "negative behavior towards women." Id.

After Vera spoke to Martin, Martin called Wagner and asked him to apologize to Vera. Later that day, Wagner called Vera to apologize for yelling at her. The next day, Wagner told Vera that he did not want to speak to her anymore and that she was to report to Gordineer moving forward. Nevertheless, Vera continued to meet with Wagner. She did so less frequently, but still approximately once each week.

III.    <u>Vera's Termination</u>

As the showroom manager, Vera was responsible for making sure that her employees were properly trained. In that capacity, she sent a January 19, 2020 email reminding them to take full deposits when placing orders and that, "Nothing can leave the building without being paid in full." Doc. no. 41-3 at 39.

On May 29, 2020, Vera ordered an air conditioning unit for herself with help from Alex Lee, a 13-year Webb employee who worked in the warehouse. Later that day, Vera ordered herself another air conditioning unit. She put her name on both orders in the system. Vera claims

that Lee told her that employees could take units home and pay for them later. Lee disputes that he ever said that.

On June 18, 2020, William Pentland, the operations manager for Webb's Nashua location, received an internal email asking him to identify any unsold air conditioning units. He noticed that there were two units in Nashua that had been received but had not been paid for. On June 19, he asked Vera about them, and she explained that she had taken them home. Webb claims that Vera told Pentland that she had taken the units home one to two weeks prior; Vera claims that she had taken them home the previous day.

Immediately after speaking with Pentland, Vera paid for the units. Nevertheless, later that day, Webb fired her. There is a dispute regarding the events surrounding Vera's termination. Vera claims that Wagner told her that he "called corporate and got it [my termination] pushed through." Doc. no. 43-2, ¶ 45 (brackets in original). Webb claims that Pentland called Martin and Robert Mucciarone, Webb's chief operating officer, and that they made the decision to fire Vera without Wagner's involvement. Webb also claims that Martin and Mucciarone then notified Pentland that he and Wagner were to tell Vera that she was being fired. According to Webb, it had a policy prohibiting the "misappropriation of any F.W. Webb property" by employees. Doc. no. 41-5, ¶ 19. During oral argument, Webb's counsel clarified that there was no written policy when Vera took home the air conditioning units but maintained that a policy existed. There is evidence in the record that Webb had previously terminated four male store managers for stealing products or allowing merchandise to leave facilities without payment.

Discussion

Vera alleged claims under Title VII and RSA 354-A for gender discrimination (Count I), hostile work environment (Count II), and retaliation (Count III). She also alleged a claim under New Hampshire common law for wrongful termination (Count IV). Webb moved for summary judgment on each of those claims. Doc. no. 41. After the motion hearing, Vera voluntarily dismissed Count I. Doc. no. 52.

This court, and the New Hampshire Supreme Court, view Title VII as "instructive when interpreting" RSA 354-A. Carney v. Town of Weare, No. 15-cv-291-LM, 2017 WL 680384, at *6 (D.N.H. Feb. 21, 2017) (citing Majeda v. MPB Corp., 149 N.H. 371, 378 (2003)). Thus, the court will analyze both claims using the language and precedent of the federal claims.


I.     Hostile Work Environment

To state a hostile work environment claim under Title VII, Vera must show:

> (1) that she . . . is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Forsythe v. Wayfair Inc., 27 F. 4th 67, 72 (1st Cir. 2022) (quotation omitted). Webb argues that Vera has failed at the fifth and sixth prong of the test—that Vera's experience at Webb was neither subjectively nor objectively offensive, and that there is no basis for employer liability. The court considers each contention in turn.

A. <u>Offensive Conduct</u>

Webb maintains that Vera's experience at Webb was neither subjectively nor objectively offensive. Webb contends that Vera's subjective perception falls short because she never reported Wagner's conduct to Martin. But reporting is not the only way to express subjective offense. An employee might express emotional discontent, like being "disgusted" or "bothered" by the conduct at issue. <u>Gerald v. Univ. of P.R.</u>, 707 F.3d 7, 19 (1st Cir. 2013). In that vein, Vera described her one-on-one meetings with Wagner as "uncomfortable," and tried to make them as brief as possible. Doc. no. 43-2, ¶ 10. Additionally, she allegedly "fidget[ed] with her sweater or scarf," and "fold[ed] [her] arms across [her] breasts" to try to get Wagner to stop ogling her. <u>Id</u>. Vera's articulated emotional states and physical actions are sufficient at this stage to create a dispute of fact as to whether Wagner's behavior was subjectively offensive.

Webb next argues that Vera's work environment was not objectively offensive. As the Supreme Court has long recognized, determining what constitutes a hostile environment is not a "mathematically precise test." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22 (1993). "[T]he hostility vel non of a workplace does not depend on any particular kind of conduct; indeed, a worker need not be propositioned, touched offensively, or harassed by sexual innuendo in order to have been sexually harassed." <u>Billings v. Town of Grafton</u>, 515 F.3d 39, 48 (1st Cir. 2008) (quotation omitted). "Subject to some policing at the outer bounds, it is for the jury to . . . decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." <u>Rivera-Rivera v. Medina & Medina, Inc.</u>, 898 F.3d 77, 91 (1st Cir. 2018) (quotation omitted). Harassment affects the conditions of one's employment when it constitutes "an impediment to" the plaintiff's work performance. <u>Billings, 515 F.3d at 51</u> (quotation omitted).

In Billings v. Town of Grafton, the First Circuit concluded that summary judgment on a hostile work environment claim was inappropriate where a supervisor regularly stared at an employee's breasts for five-second intervals because a reasonable jury could find that such conduct was objectively offensive. 515 F.3d at 49. Vera alleges similar conduct here and adds to it frequent unwanted touching and a variety of offensive remarks. Further, Wagner's conduct impeded Vera's performance at work: because of Wagner's conduct, Vera says that she limited her interactions with Wagner, which in turn limited her ability to ask her supervisor work-related questions.

Webb seeks to distinguish Billings in two ways. First, Webb argues that in Billings, other women reported the alleged perpetrator for similar offensive behavior, whereas none of Vera's co-workers have brought forth allegations against Wagner. That argument misses the mark. Other complaints can help establish objective offense, but their absence is not determinative. The fact that others did not complain of harassment does not alter Vera's alleged experience. Moreover, Martin's purported statements to Vera create a dispute of fact as to whether other Webb employees had made gender-based complaints about Wagner.

Second, Webb points out that, in response to the supervisor's stares in Billings, the plaintiff changed what she wore to work and carried things in front of her chest to block her supervisor's view. The court held that a jury could reasonably conclude that this interfered with the plaintiff's work performance. Billings, 515 F.3d at 51. Webb asserts that Vera cannot say the same thing of her situation. But as detailed above, Vera testified that she folded her arms when interacting with Wagner and that Wagner's conduct deterred her from prolonged interactions with him, interactions where she could ask him questions about the workplace. A jury could likewise reasonably conclude that these circumstances interfered with Vera's work performance.

8

B.  Employer Liability

Webb seeks refuge from employer liability by asserting the Faragher-Ellerth defense. The Faragher-Ellerth defense may protect an employer from liability for a hostile environment created by a supervisor. Chaloult v. Interstate Brands Corp., 540 F.3d 64, 73 (1st Cir. 2008) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 805 (1998)); see also Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998). Under Faragher-Ellerth, an employer must show (1) that it "exercised reasonable care to avoid harassment and to eliminate it when it might occur," and (2) "that 'the complaining employee had failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided.'" Chaloult, 540 F.3d at 73 (quoting Faragher, 524 U.S. at 805). However, the Faragher-Ellerth defense is not available when "a supervisor's harassment of an employee results in a 'tangible employment action against the employee.'" Agusty-Reyes v. Dept. of Educ. of P.R., 601 F.3d 45, 53 (1st Cir. 2010) (quoting Ellerth, 524 U.S. at 765). "The harassing supervisor must be the one who orders the tangible employment action or, at the very least, must be otherwise substantially responsible for the action." Id. (brackets and quotation omitted). In such cases, "[n]o affirmative defense is available." Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 86 (1st Cir. 2006) (quoting Faragher, 524 U.S. at 808).

Here, there is a dispute as to who was responsible for Vera's termination. As discussed above, Vera claims that Wagner told her that he was responsible, whereas Webb denies that Wagner was involved in the decision. The summary judgment standard requires the court to resolve this dispute in favor of Vera. At this stage, because Wagner was Vera's supervisor and there is evidence in the record upon which a jury could find that he was responsible for both

harassing and firing her, Webb cannot avail itself of the Faragher-Ellerth defense. It is not entitled to summary judgment on Vera's hostile work environment claim.

II.    Retaliation

Where, as here, there is no direct evidence of retaliation, claims for retaliation under Title VII are subject to the McDonnell-Douglas burden-shifting analysis. Stratton v. Bentley Univ., 113 F.4th 25, 42 (1st Cir. 2024) (describing McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under that approach, it is first Vera's burden to make out a *prima facie* showing of retaliation. Id. She does so by establishing that "(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." Id. at 41-42 (quotation omitted). If she succeeds, the burden then shifts to Webb to provide a non-retaliatory reason for Vera's termination. McDonnell-Douglas Corp., 411 U.S. at 802. Finally, if Webb carries its burden, Vera must show that the proffered non-retaliatory reason is pretext and that "retaliatory animus was the real motivating factor." Stratton, 113 F.4th at 42 (quotation omitted).

A.    *Prima Facie* Case

Webb argues that Vera cannot make out a *prima facie* case. Vera argues that she has done so. She argues that she engaged in protected activity when she complained to Martin about Wagner on March 16, 2020. She asserts that she suffered two materially adverse employment actions, first when Wagner shunned her and then when he terminated her. Finally, she states that both of these actions were causally linked to her conversation with Martin.

1.  Protected Activity

"An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (quotation omitted). "There is no question" that an employee "undert[akes] protected conduct by submitting" a complaint of gender-based mistreatment "to human resources." Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 220 (1st Cir. 2016).

Webb argues that Vera cannot make a *prima facie* showing that her complaint to Martin was a protected activity because it was a general workplace complaint about Wagner's language and was not related to allegations of sexual harassment or disparate treatment on the basis of gender. But Vera's affidavit states that she told Martin about Wagner's "inappropriate behavior towards women," and that "Wagner does not ever treat men the same way" he treats women. Doc. no. 43-2, ¶ 31. At summary judgment, the court must view the record in the light most favorable to Vera. For the purpose of summary judgment, she has satisfied her burden of showing that she engaged in protected activity.

2.  Adverse Employment Action

Webb does not contest that Vera suffered an adverse employment action when Webb fired her. See Ponte v. Steelcase, Inc., 741 F.3d 310, 321 (1st Cir. 2014) (termination is an adverse action). It does, however, contest that Wagner's allegedly "shunning" Vera constitutes an adverse employment action sufficient to establish a *prima facie* case.

In her complaint, Vera alleges that Wagner apologized to her after she complained about him to Martin. Then he "told her that he was done with her and the showroom and that she was to report to Gordineer." Doc. no. 22, ¶ 30. She also alleges that Wagner ignored her after that date and spoke to her only when necessary. Id., ¶ 31. In her affidavit in support of her objection to Webb's summary judgment motion, Vera states that Wagner's behavior amounted to "shunning" her. Doc. no. 43-2, ¶ 33. She argues that it "made it harder for her to do her job." Doc. no. 43-1 at 12. On the other hand, she acknowledges that she continued to meet with Wagner approximately once per week.

In the context of Title VII retaliation, an action is materially adverse when it "would have dissuaded a reasonable employee from making a complaint of discrimination." Stratton, 113 F.4th at 44. At summary judgment, although the court must draw "all reasonable inferences" in Vera's favor, it may not "rely on conclusory allegations, improbable inferences, and unsupported speculation." Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 108 (1st Cir. 2024) (quotation omitted).

Vera's claim of retaliation based on Wagner shunning her does not rise above the level of a conclusory allegation. Vera does not point to any specific conduct showing that Wagner shunned her, such as an instance when Wagner refused to talk to her. Nor does she explain how his direction to report to Gordineer had any negative effect on her job. In the absence of any concrete evidence, Vera cannot establish a *prima facie* retaliation claim based on Wagner shunning her. As a result, Webb is entitled to summary judgment on Count III to the extent that the claim is premised upon Vera's allegation that Wagner shunned her in retaliation for her report to Martin.

3.  Causation

Webb also argues that Vera cannot establish a *prima facie* case based on her termination because she cannot show that her complaint to Martin caused her termination. To prove causation in her retaliation claim, Vera "need only raise a genuine issue of fact as to whether retaliation motivated the adverse employment action." Kinzer, 99 F.4th at 115 (quotation omitted). However, to do so, she "must show that [Webb] would not have taken the adverse action but for a desire to retaliate." Stratton, 113 F.4th at 44 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013)). A temporal proximity of a few months is "sufficient to meet the relatively light burden of establishing a *prima facie* case of retaliation." Mariani-Colón v. Dep't of Homeland Sec., ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007); see Kinzer, 99 F.4th at 117; Stratton, 113 F.4th at 45.

Viewing the evidence in the light most favorable to Vera, she has carried her burden to demonstrate causation. There is evidence in the record that Vera made a gender-based complaint about Wagner's behavior to Martin. After learning of Vera's complaint, Wagner told Vera to stop reporting to him and began meeting with her less frequently. Three months after Vera's complaint, Webb fired her. Although Webb claims that Wagner had no role in making that decision, Wagner allegedly told Vera that he "called corporate and pushed [her termination] through." Doc. no. 43-2, ¶ 45. In light of Wagner's alleged comments and the temporal proximity between Vera's complaint and her termination, Vera has satisfied her *prima facie* case.

B.  Non-discriminatory Justification

Because Vera can make out a *prima facie* case of retaliation for the purpose of summary judgment, the burden shifts to Webb under McDonnell-Douglas to offer a "legitimate, non-

discriminatory reason for the adverse employment action." Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 94 (1st Cir. 2018) (quotation omitted). "To do so on summary judgment, [Webb] need[s] only to produce enough competent evidence, taken as true, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action." Id. (quotation omitted).

Webb claims that it fired Vera because she took home air conditioning units without paying for them. Webb offers evidence to show that it has a policy of firing employees who misappropriate property, and that it has fired male employees for such conduct in the past. At this stage, that suffices to establish a non-discriminatory reason for Vera's termination. See Kinzer, 99 F.4th at 117 ("Uniform application of a facially neutral policy" is enough to show non-discriminatory justification. (quotations omitted)).

C.  Pretext

Finally, at the third step of the McDonnell-Douglas framework, the burden shifts back to Vera, who must "point to specific facts that would demonstrate to a reasonable jury that" Webb's proffered reason for terminating her "was a sham or pretext intended to cover up [Webb's] retaliatory motive." Kinzer, 99 F.4th at 118 (quotation omitted). "There is simply no mechanical formula for assessing whether an employee has established pretext." Id. (quotation omitted). Evidence of pretext exists when a reasonable jury could find that the facts underlying an adverse employment action do not match the employer's stated reason for taking the action. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 7-8 (1st Cir. 2000). "[T]he behavior of . . . management" may also suggest "retaliatory animus." Kinzer, 99 F.4th at 119; see Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 147 (1st Cir. 2013). That is

particularly true when an employee "receive[s] harsher discipline than would be expected."

Kinzer, 99 F.4th 119.

Vera argues that the circumstances of her termination and Wagner's statements could establish that Webb's offered reason for firing her was pretext for discrimination. In her affidavit, Vera states that Lee, a senior employee, told her that Webb allowed employees to take products home before paying for them. She further states that she took actions that someone trying to avoid payment would not have taken: she paid for the units one day after she took them home, and she attached her name to the items in the purchase system. In addition, Wagner, her supervisor and the subject of Vera's gender-based harassment complaint, told Vera that he pushed her firing through. Vera argues that, given these facts, a reasonable jury could infer that Webb fired her in retaliation for her protected activity, rather than for misappropriating property.

Webb counters that it had a firm policy of terminating employees who took products home without paying for them and that it fired four male employees in the past for doing so. But viewing the evidence in the light most favorable to Vera, those facts are in dispute. For example, although Vera sent an email to her direct reports telling them that customers could not take products home without first paying for them, a reasonable jury could find that there was not a similar rule for employees. Further, although Webb argues that it previously fired four male employees for taking products home without paying for them, it has not provided enough information to know whether the firings are sufficiently similar to be considered comparators. For instance, did those employees try to hide the fact that they took the products home as Vera did? And did they put their names on the orders as Vera did?

In short, although Webb takes issue with much of the evidence Vera offers to support pretext, at this stage the court must resolve disputes of fact in Vera's favor. Given the potentially

mitigating factors surrounding her purchase of the air conditioners and Wagner's alleged

comment to her about his role in her termination, a jury could reasonably find that Webb would

not have fired Vera but for her complaint to Martin. See Travers, 737 F.3d at 148 (reversing grant

of summary judgment on a retaliation claim because the employer's discretionary policy could

have allowed a jury to conclude that an employee "might well have been spared . . . but for a

desire to get rid of him"); Kinzer, 99 F.4th at 118. Consequently, Webb is not entitled to summary

judgment on Count III to the extent that it is premised on Vera's termination.


III.    <u>Wrongful Termination</u>

Finally, Vera asserts a New Hampshire common law claim for wrongful termination. A

wrongful termination claim under New Hampshire law contains two elements: "(1) the employer

terminated the [plaintiff's] employment out of bad faith, malice, or retaliation; and (2) the

employer terminated the employment because the employee performed acts that public policy

would encourage or because she refused to perform acts that public policy would condemn."

Donovan v. S. New Hampshire Univ., 175 N.H. 489, 492 (2022). Because, as discussed above,

Vera has presented sufficient evidence to permit a reasonable jury to find that Webb terminated

her in retaliation for her complaint about Wagner, she can likewise satisfy the first element of her

wrongful termination claim. Rand v. Town of Exeter, 976 F. Supp. 2d 65, 77 (D.N.H. 2013).

A plaintiff can satisfy the second element of a wrongful termination claim by pointing to

a statute—federal or state—that embodies a public policy that clearly encourages the plaintiff's

act. Casey v. St. Mary's Bank, No. 22-cv-252-PB, 2024 WL 2319961, at *7 (D.N.H. May 22,

2024). Both Title VII and RSA 354-A encourage employees to report gender-based workplace

misconduct. Thus, looking at the facts in the light most favorable to Vera, a reasonable jury could find that she was wrongfully terminated. Webb is not entitled to summary judgment on Count IV.

<u>Conclusion</u>

For the foregoing reasons, the court grants Webb's motion for summary judgment on Vera's retaliation claim in Count III to the extent that it is based on allegations that Wagner retaliated against her by shunning her. To the extent that Count III is premised on Vera's termination, the court denies the motion for summary judgment. The court also denies summary judgment on all other remaining counts.

SO ORDERED.

Samantha D. Elliott
United States District Judge

February 25, 2025

cc: Counsel of Record

17